IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | |
|---|---|
| ARIELLE SIMMS, § | |
| § | |
| **Plaintiff,** § | |
| § | |
| v. § | CIVIL ACTION NO. _____ |
| § | JURY DEMANDED |
| INFRASTRUCTURE AND ENERGY § | |
| ALTERNATIVES, INC. and IEA § | |
| CONSTRUCTORS, LLC, § | |
| § | |
| **Defendants.** § | |

## PLAINTIFF'S ORIGINAL COMPLAINT

After laughing off Plaintiff's complaints of sexual harassment in the workplace, Defendants continued to subject Plaintiff to repeated solicitations for sex and constant false accusations that she was promiscuous. In Defendants' view, Plaintiff was purely a sexual object for which platonic relationships were impossible, and that therefore she must have been having sexual relationships with co-workers.

Plaintiff Arielle Simms therefore files this Original Complaint against Defendants Infrastructure and Energy Alternatives, Inc. and IEA Constructors, LLC based on their acquiescence to, and indeed fostering and encouraging, a workplace pervaded by sexual harassment. Despite Plaintiff's pleas to work in an environment free from harassment, Defendants failed to take the immediate and appropriate corrective action required under Texas Labor Code § 21.142. Defendants ultimately terminated Plaintiff's employment on the basis of her sex and in retaliation for her complaints of sexual harassment. Plaintiff requests equitable relief, lost wages, compensatory damages, exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs for Defendants' unlawful and malicious acts.

I.       **PARTIES AND SERVICE**

1.       Plaintiff Arielle Simms is a resident of Uvalde County, Texas.

2.       Defendant Infrastructure and Energy Alternatives, Inc. is a Delaware corporation with its principal place of business at 6325 Digital Way, Suite 460, Indianapolis, Indiana 46278. Infrastructure and Energy Alternatives, Inc. conducts business in Texas, including employing employees in Texas and overseeing infrastructure and energy business and jobsites in Texas. However, Infrastructure and Energy Alternatives, Inc. has not designated an agent for service of process in this state.  Therefore, pursuant to Texas Civil Practice and Remedies Code § 17.044, Infrastructure and Energy Alternatives, Inc. can be served via the Texas Secretary of State at the following address:  Service of Process, Secretary of State, James E. Rudder Building, Room 105, Austin, Texas 78701.

3.       Defendant IEA Constructors, LLC is a Wisconsin limited liability company headquartered in Indiana, but registered to do business in Texas. IEA Constructors, LLC may be served via its registered agent, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201, or wherever it may be found.

4.       Defendant Infrastructure and Energy Alternatives, Inc. is the parent or an affiliate entity of Defendant IEA Constructors, LLC (together, hereinafter referred to as the "IEA Defendants" or "IEA").  The IEA Defendants share officers and business locations, including shared corporate headquarters at 6325 Digital Way, Suite 460, Indianapolis, Indiana 46278.  The IEA Defendants are connected such that they can be considered a single, integrated enterprise or a joint employer with respect to Plaintiff.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because there is diversity of citizens between the parties. Plaintiff is a citizen of Texas, and Defendants are citizens of Indiana.

6. Venue is proper in the Eastern District of Texas, under 28 U.S.C. § 1391(b)(2) because Defendants regularly conduct business in this District and because a substantial part of the events or omissions forming the basis of the suit occurred in this District.

7. On April 29, 2022, Plaintiff timely dual-filed a Charge of Discrimination with the Texas Workforce Commission and the U.S. Equal Employment Opportunity Commission, alleging discrimination and harassment on the basis of sex and retaliation. This lawsuit is being filed more than 180 days after Plaintiff filed the Charge. Thus, all administrative and jurisdictional prerequisites have been met or have expired.

8. All administrative and jurisdictional prerequisites have been met or have expired.

## III. FACTUAL SUMMARY

9. Plaintiff was hired as an Operator for IEA in March of 2021 and was promoted to Foreman in January of 2022. Her tenure, prior to the retaliatory actions described herein, was devoid of any warnings, negative performance evaluations, or disciplinary actions.

10. In April 2021, Operator James Perkins, male, said to Plaintiff, "Everyone is trying to fuck you, Arielle. Not me though. I don't want to fuck you. I just want to finger you."

11. Plaintiff reported Perkins' comment to her then-Foreman and immediate supervisor, Shannon Swanson, who is male. Instead of taking any corrective action against Perkins, Swanson merely laughed and dismissed the harassment by saying, "What a nut! Some of these guys don't know how to talk to a girl, they haven't seen one at work that was attractive as you."

12. A few weeks later, emboldened by IEA's lack of corrective action, Perkins began telling the other operators that Plaintiff had sex with several of her coworkers. Again, she reported these false and harmful allegations to Swanson. Again, Swanson failed to take any corrective action in response. Instead, Swanson responded by begging her not to escalate her reports to Superintendent Bill Tarker, who was on vacation at the time.

13. Plaintiff told Swanson that she was uncomfortable being the only woman on the job site, especially with the false rumors now being spread. Swanson, nor any officer of IEA, ever confronted Perkins about his harassing conduct.

14. In October 2021, while staying in a hotel for a project, Tarker and Plaintiff were sitting outside a hotel working on jobsite plans when Swanson approached them, visibly stressed, and said to Plaintiff, "You're bad for marriages!" Swanson continued, "I know it's not you, it's my wife she's fucking nuts and we fight about you almost every day," referring to his attraction towards Plaintiff.

15. A few nights later, Swanson approached Tarker and Plaintiff again and asked if Plaintiff had threesomes with Tarker and Tarker's wife. Plaintiff, appalled, said she did not.

16. On the same hotel stay, a few nights later, several coworkers were socializing outside the hotel. Around 9:30 pm, Swanson followed Plaintiff onto the elevator as she was heading up to her room for the night. In the elevator, Swanson begged Plaintiff to come into his room. Plaintiff refused. When they arrived at Plaintiff's floor, Swanson blocked the elevator doors for several minutes while he continued pleading with her to come to his room. Plaintiff had to refuse numerous times before Swanson finally relented and allowed her to leave the elevator.

17. Plaintiff reported the incident to Tarker that same night, and told Tarker that if this continued, she would make a formal HR report, which she had avoided prior for fear of retaliation.

Tarker responded that he had addressed the harassment with Swanson no less than three times prior, and assured her that he would speak to Swanson again. The following day, Tarker told Plaintiff that he again counseled Swanson.

18. During the first week of January 2022, Perkins and Plaintiff were both promoted to Foreman. Instead of treating Plaintiff with professionalism, Perkins regularly referred to her as "whore," claimed that she was in a sexual relationship with Tarker, and that she was only promoted because she "fuck[s] everybody." All of Perkins's allegations are false.

19. Upon learning of Perkins's false and sexually harassing accusations against Plaintiff, she pleaded with him to stop. Perkins responded by screaming, "I don't care! I'll drag up right now!" From this point onward, countless employees, coworkers, and contractors began reporting to Plaintiff that Perkins constantly made sexist and derogatory false claims about her on a regular basis.

20. Perkins began a friendship with operator Jamie Pearce, male. Soon after, Pearce's girlfriend, Autumn, messaged Plaintiff on social media to warn Plaintiff of Perkins' and Pearce's plans to create pretext to terminate my employment. These efforts became increasingly evident as on February 2, 2022, Plaintiff received a phone call from HR informing her that Pearce had filed a sexual harassment complaint against Plaintiff. Plaintiff explained that while she and Pearce and were consensually flirtatious in the past, their relationship never became physical nor had Plaintiff harassed Pearce in any way. Plaintiff then showed HR the messages from Autumn demonstrating the real intentions of Pearce's complaint. His true intentions revealed, Pearce withdrew the complaint and the investigation was closed.

21. IEA failed to take appropriate corrective action against Pearce and Perkins in response to their discriminatory and retaliatory scheme to have Plaintiff terminated.

22. Following Plaintiff's report to HR of Perkins and Pearce's harassing and retaliatory scheme to have her terminated, Perkins refused to communicate with Plaintiff, making it extremely difficult to perform her duties.  Plaintiff reported this to Swanson.  Instead of taking any corrective action against Pearce and Perkins, Swanson accused Plaintiff of lying.

23. Plaintiff then escalated her complaint to Tarker once again, as Swanson's refusal to listen in retaliation for her reporting Swanson's own harassment left her no choice.

24. Tarker contacted his immediate supervisor, Construction Manager Dan Bontrager, repeatedly about Pearce's and Perkins' increasing harassment and Swanson's retaliatory disregard. Bontrager refused to provide guidance to Tarker nor Plaintiff, and failed to take any corrective action against Pearce and Perkins.

25. After it was clear the Bontrager would continue to ignore Tarker's reports, Tarker suggested that he and Plaintiff should make the report together so Bontrager could speak with me directly and witness first-hand how the harassment and retaliation affected her.  Even after hearing Plaintiff's complaints of sexual harassment and retaliation directly, instead of taking any corrective action against Pearce, Perkins, and Swanson, Bontrager responded flippantly, "You're a girl. You're a supervisor. This is construction."

26. On February 17, 2022, Drue Proffer from HR met with Plaintiff at IEA's jobsite in Mount Vernon, Texas.  Instead of focusing on the rampant harassment and retaliation Plaintiff had experienced, Proffer instead interrogated Plaintiff about her relationship with Perkins, immediately bombarding Plaintiff with questions about the rumors of a sexual relationship with Tarker, which did not exist.  Plaintiff tried to explain to Proffer that these rumors were one of the very reasons she made the report.  Proffer pressed further, condescendingly asking if Plaintiff was "sure" every

time she denied having a sexual relationship with Tarker. Proffer became irritated at the denials of the allegations and abruptly ended the meeting.

27. Instead of taking immediately and appropriate corrective action against Perkins and Pearce, Proffer instead made Plaintiff the subject of a retaliatory and pretextual investigation.

28. Since this meeting, Tarker, the only person who believed Plaintiff, was transferred to another state. The locks on the female toilets were then cut off, and despite Plaintiff's efforts in replacing them, Bontrager continued to cut them off.

29. On April 10, 2022, Bontrager issued Plaintiff a retaliatory and pretextual write-up for calling the safety team to alert them of a bird's nest on the job site. Plaintiff, however, was required by the wildlife protection protocol to make this report.

30. On April 15, 2022, in his further retaliatory attempts to create pretextual reasons to discipline Plaintiff, Bontrager asked several of my direct reports to "think of anything Arielle does to cause problems and let me know."

31. On April 16, 2022, Tarker called Bontrager to try to transfer Plaintiff onto Tarker's new jobsite, since Tarker knew Plaintiff was still being harassed and retaliated against.

32. Bontrager responded to Tarker, "You may want to think twice about keeping her around, she's sending naked pictures to mechanical guys." This accusation was false, as Bontrager either knew or should have known.

33. Between April 15, 2022, and April 20, 2022, Plaintiff sent several emails to John Nettleton, IEA's Director of Field Staffing, and Joseph Alt, IEA's Vice President of Operations. These emails laid out in detail the sexual harassment, intimidation, and retaliation that Plaintiff had suffered to date from Perkins, Pearce, Swanson, and Bontrager, as well as Proffer's demeaning interrogation. She explained how she had followed IEA's chain of command and escalated the

situation to HR, all to no effect, and instead fearing for her job and experiencing emotional distress due to the sexually harassing and retaliatory actions and inactions of IEA, its managers, and HR, and that she would have to take legal action if IEA refused to fulfill its legal obligations in response to her complaints. In response, Nettleton and Alt failed to take immediate and appropriate corrective action against anyone.

34. On May 24, 2022, Proffer met with Plaintiff again, this time showing her two documents, the first of which Plaintiff did not immediately recognize. However, after Proffer reminded Plaintiff of the context and Plaintiff examined it more closely, she recognized it was a document Tarker had written and that she had proofread at his request for spelling errors. The second document was a poem that Tarker had sent to Plaintiff for her advice on whether to send it to his wife, which he did occasionally when he was in the midst of his divorce. Proffer used this to again claim that Plaintiff and Tarker must therefore have been having a sexual relationship. Plaintiff explained that the poem was not directed at her and that Tarker, distraught during his divorce, sought her advice which she welcomed since they were friends. Proffer then terminated Plaintiff's employment with IEA for "lying" about not recognizing the first document immediately.

35. IEA's basis for terminating Plaintiff is false and pretextual, including due to the fact that it was because she simply failed to immediately recognize a document without any context.

36. All conditions precedent have been met or have expired.

## IV. CAUSES OF ACTION

### COUNT ONE: CREATION OF A HOSTILE WORK ENVIRONMENT IN VIOLATION OF THE TCHRA AGAINST THE IEA DEFENDANTS

37. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

38. Plaintiff has satisfied all administrative and jurisdictional prerequisites in connection with her claim under the Texas Commission on Human Rights Act, TEXAS LABOR CODE Ch. 21 (the "TCHRA").

39. At all times relevant, the IEA Defendants were an "employer" as defined by the TCHRA. The IEA Defendants employed 15 or more employees for each working day in each of 20 or more calendar weeks in 2021 and/or 2022.

40. When Plaintiff worked for the IEA Defendants, she was an "employee" as defined by the TCHRA.

41. The IEA Defendants either knew or should have known about the sexually intimidating environment, including their own roles in fostering it, as well as knew or should have known about Plaintiff's complaints of sexual harassment.

42. The IEA Defendants subjected Plaintiff to a hostile work environment by subjecting her to a sexual harassing environment, refusing to stop the sexual harassment, and retaliating against Plaintiff for reporting the sexual harassment.

43. Sexual harassment, fostered by the IEA Defendants' failures to take immediate and appropriate corrective action, permeated Plaintiff's workplace with discriminatory intimidation and was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment, creating a hostile or abusive work environment.

44. Plaintiff requests injunctive and other equitable relief, including but not limited to an order enjoining the IEA Defendants from engaging in unlawful harassment, including by requiring adequate training and the enactment of policies and procedure to avoid further discrimination against their employees.

45. As a direct and proximate consequence of the IEA Defendants' violation, Plaintiff has suffered damages.

46. Plaintiff's damages include past and future mental anguish, inconvenience, and loss of enjoyment of life.

47. The IEA Defendants' acts and omissions were malicious or made with reckless indifference to her state-protected rights, therefore entitling Plaintiff to punitive damages.

48. Plaintiff seeks injunctive and other equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT TWO:   RETALIATORY DISCHARGE IN VIOLATION OF THE TCHRA AGAINST THE IEA DEFENDANTS**

49. Plaintiff re-alleges the foregoing allegations as if fully set forth herein.

50. After Plaintiff filed a complaint of sexual harassment, the IEA Defendants retaliated against Plaintiff by terminating Plaintiff's employment.

51. Plaintiff's termination was on the basis of her complaint of sexual harassment in violation of the TCHRA.

52. Plaintiff requests injunctive and other equitable relief, including but not limited to an order enjoining the IEA Defendants from engaging in unlawful retaliation, including by requiring adequate training and the enactment of policies and procedure to avoid further retaliation against their employees.

53. Plaintiff further requests other equitable relief, including by not limited to reinstatement and back pay and/or front pay.

54. As a direct and proximate consequence of the IEA Defendants' violation, Plaintiff has suffered damages.

55. Plaintiff's damages include past and future mental anguish, inconvenience, and loss of enjoyment of life.

56. Plaintiff's termination was malicious or made with reckless indifference to her state-protected rights, therefore entitling her to punitive damages.

57. Plaintiff seeks injunctive and other equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**COUNT THREE:   DISCRIMINATORY DISCHARGE IN VIOLATION OF THE TCHRA AGAINST THE IEA DEFENDANTS**

58. Plaintiff re-alleges the foregoing allegations as it fully set forth herein.

59. Plaintiff's termination was on the basis of her gender in violation of the TCHRA.

60. Plaintiff requests injunctive and other equitable relief, including but not limited to an order enjoining the IEA Defendants from engaging in unlawful discrimination, including by requiring adequate training and the enactment of policies and procedure to avoid further discrimination against their employees.

61. Plaintiff further requests other equitable relief, including by not limited to reinstatement and back pay and/or front pay.

62. As a direct and proximate consequence of the IEA Defendants' violation, Plaintiff has suffered damages.

63. Plaintiff's damages include past and future mental anguish, inconvenience, and loss of enjoyment of life.

64. Plaintiff's termination was malicious or made with reckless indifference to her state-protected rights, therefore entitling her to punitive damages.

65. Plaintiff seeks injunctive and other equitable relief, compensatory and exemplary damages, pre- and post-judgment interest, attorneys' fees, and costs.

**V.     JURY DEMAND**

66.     Plaintiff demands a jury trial and has tendered the appropriate fee.

**VI.    PRAYER**

WHEREFORE, Plaintiff respectfully requests that the Court:

A.     Issue summons for Defendants Infrastructure and Energy Alternatives, Inc. and IEA Constructors, LLC to appear and answer;

B.     Award to Plaintiff a judgment against Defendants, jointly and severally, for:

1. Injunctive and other equitable relief, including but not limited to an order:

   a. Prohibiting Defendants from engaging in unlawful discrimination;

   b. Requiring Defendants to enact policies and procedures that require adequate training of their employees with respect to discrimination and sexual harassment;

   c. Requiring Defendants to enact policies and procedures that require adequate training of their executive, managerial, supervisory, and human resources personnel to lawfully handle reports of sexual harassment in a prompt and sensitive manner; and

   d. Reporting to the Court the manner of Defendants' compliance with the terms of a final order issued by the Court;

2. Such other equitable relief as may be appropriate, including but not limited to reinstatement and/or lost wages and benefits (both past and future), the sum to be determined at time of trial;

3. Damages for emotional distress and mental anguish;

4. Compensatory and exemplary damages in the maximum amount allowed by law;

5. Pre- and post-judgment interest;

6. Attorneys' fees; and

7. Costs.

Plaintiff also requests such other relief to which she is entitled in equity and at law.

Respectfully Submitted,

*/s/ Jennifer J. Spencer*
Jennifer J. Spencer
Texas Bar No. 10474900
jspencer@jacksonspencerlaw.com
James E. Hunnicutt
Texas Bar No. 24054252
jhunnicutt@jacksonspencerlaw.com
JACKSON SPENCER LAW PLLC
Three Forest Plaza
12221 Merit Drive, Suite 160
Dallas, Texas 75251
(972) 458-5301 (Telephone)
(972) 770-2156 (Fax)

**ATTORNEYS FOR PLAINTIFF**
**ARIELLE SIMMS**